UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERON COVE ASSOCIATION, *et al*.,

     Plaintiff,

                              Case No. 24-cv-11458

v.                             Hon. Matthew F. Leitman

MIDLAND COUNTY BOARD OF
COMMISSIONERS, *et al*.,

     Defendants.

_____/

## <u>ORDER GRANTING DEFENDANTS'</u><br><u>MOTIONS TO DISMISS (ECF Nos. 9, 10)</u>

In this action, Heron Cove Association, an association of property owners in mid-Michigan ("Heron Cove"), and several property owners who are members of Heron Cove challenge certain special assessments that were created by Defendant Four Lakes Task Force (the "Task Force") and approved by Defendant Midland County Board of Commissioners (the "County Board"). (*See* First Am. Compl., ECF No. 1-2.) The special assessments arose out of the reconstruction of four dams that were damaged following severe flooding in 2020. Plaintiffs insist that the special assessments constitute an inverse condemnation in violation of the Takings Clauses of United States and Michigan Constitutions, and they say that the assessments were levied without due process of law in violation of both the United States and Michigan Constitutions. (*See id.*)

1

The County Board and the Task Force have now moved to dismiss all of Plaintiffs' claims. (*See* Task Force Mot., ECF No. 9; Cnty. Bd. Mot., ECF No. 10.) Defendants argue that Plaintiffs' claims are barred by *res judicata* and/or collateral estoppel, and, in any event, the claims fail on the merits. (*See id.*)

For the reasons explained below, the Court **GRANTS** the motions.

**I**

**A**

This action arises out of the failure of the Edenville Dam located in Midland and Gladwin Counties in mid-Michigan.  The Edenville Dam is one of four dams – along with the Secord, Smallwood, and Sanford Dams – that were built in 1925 "to produce hydroelectric power." (First Am. Compl. at ¶¶ 9-10, ECF No. 1-2, PageID.251.)  However, in more recent years, the "primary purpose" of the dams has been "flood control." (*Id.* at ¶ 11.)  The dams service four lakes – Secord Lake, Smallwood Lake, Sanford Lake, and Wixom Lake (the "Four Lakes") – that "provide[] the local economies" in Midland and Gladwin Counties "a substantial source of economic productivity, through tourism, sporting, and like industries." (*Id.* at ¶ 12.)

In 2018, the County Board "appointed" the Task Force "as [its] 'delegated authority' to oversee the maintenance of normal lake levels for [the Four Lakes]." *Heron Cove Ass'n. v. Midland Cnty. Bd. of Commr's*, No. 371649, 2025 WL 37903,

at *1 (Mich. Ct. App. Jan. 6, 2025).  The Task Force also "establish[ed] the Four Lakes Special Assessment District" (the "District") in order to raise revenue to operate and maintain the dams. (First Am. Compl. at ¶ 17, ECF No. 1-2, PageID.252.)

In mid-May 2020, the State of Michigan experienced a historic rainfall that caused substantial flooding. (*See id.* at ¶ 13.)  The rainfall caused the Edenville Dam to "fail[]" and the Sanford Dam to "overflow[]." (*Id.*)  The resulting flooding "destroyed properties and decimated communities and industries across Midland and Gladwin Counties." (*Id.*)  The Edenville, Secord, Smallwood, and Sanford Dams, and the Four Lakes, all suffered substantial damage.

"It was ultimately determined that repairing, improving, and replacing the four dams to restore the Four Lakes would cost approximately $399,700,000." *Heron Cove*, 2025 WL 37903, at *1.  The Task Force "secured over $200,000,000 in federal and state grants for the project and assessed that about 55% of the costs would be covered through special assessments levied on property owners" in the District. *Id.*  "The special assessment for lake-level maintenance would be collected in annual installments over forty years, totaling approximately $217,700,000." *Id.* In addition, the Task Force "created a separate [five-year] special assessment roll to cover the operational and maintenance expenses for the Four Lakes system from 2025 to 2029." *Id.*

The process of determining how to apportion the total amount of the special assessments across the property owners in the District took several years. During that time, the County Board and Task Force held meetings with property owners in the District and made several hundred adjustments to the assessment amounts based on those meetings:

> [T]he process for establishing the special assessment commenced in 2021, with opportunities for public commentary and engagement beginning in 2022. This process culminated in a public hearing on January 15, 2024, during which property owners were afforded the opportunity to articulate their objections to the special assessment and present supporting documentation. The records demonstrate that a minimum of 780 adjustments were made to the special assessment roll based on public input, predominantly reflecting the benefits accrued by individual properties.

*Id.* at *6. The County Board ultimately "approved" the final assessments and "lev[ied]" the assessments on properties within the District. (First. Am. Compl. at ¶ 3, ECF No. 1-2, PageID.250-251.)

**B**

Plaintiff Heron Cove is a "Michigan nonprofit corporation organized to promote the general welfare of its members[.]" (*Id.* at ¶ 2, PageID.250 (cleaned up).) "It is comprised of property owners and those with property interests within the [District] or adjacent to it." (*Id.*) The individual Plaintiffs in this action are

4

"members of [Heron Cove] who own or have [an] interest in property within the [District]." (*Id.*)

## C

Plaintiffs have brought two separate actions challenging the special assessments. First, on February 20, 2024, Plaintiffs "filed a claim of appeal" in the Midland County Circuit Court pursuant to Mich. Comp. Laws § 324.30714(4) "contesting the [County Board's] decision[]" to approve the special assessments (the "First State Court Action").[1] *Heron Cove*, 2025 WL 37903, at *1. In the First State Court Action, Plaintiffs "challenge[d] the levying and distribution of the special assessments[.]" *Id.* They asserted that "the [County Board's] decision[] [was] not authorized by law and [was] not supported by competent, material, and substantial evidence overall." *Id.* More specifically, Plaintiffs argued, among other things, that (1) "the special assessments were improper because the properties owned by the [Plaintiffs] received little to no special benefit or increase in market value from the assessment, beyond what the community as a whole received" and (2) "the assessment amounts imposed on their properties were grossly disproportionate to the increase in market value attributable to the improvements, constituting a taking of property without due process of law." *Id.* at *2. They therefore asked "the circuit

---

[1] Mich. Comp. Laws § 324.30714(4) provides that a "special assessment roll with the assessments listed shall be final and conclusive unless appealed in a court within 15 days after county board approval."

court [to] vacate the special assessment rolls and order a reapportionment so that the assessments would align more closely with the increase in market value resulting from the improvements." *Id.*

The state circuit court declined to grant Plaintiffs relief on June 20, 2024. (*See* St. Ct. Order, ECF No. 17-4.)  The state court first addressed Plaintiffs' argument that "the procedures followed by [the County Board and the Task Force] were insufficient to safeguard [Plaintiffs'] due process rights." (*Id.*, PageID.735.)  The state court rejected that argument and explained that Plaintiffs received sufficient due process when Defendants, among other things, properly noticed and held a public hearing on the special assessments and heard objections from property owners in the District before the special assessments were levied:

> "The right to due process of law is a flexible concept and must be analyzed by considering the particular circumstances presented in a given situation." *In re Chappel Dam,* 282 Mich App at 150 (citing *In re Van Ettan Lake,* 149 Mich App 517, 526; 386 NW2d 572 (1986)). "To comport with due process, notice, when required, must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Elba Twp v Gratiot Co Drain Comm'r,* 493 Mich 265, 287-88; 831 NW2d 204 (2013). The required notice for a public hearing under the [Inland Lake Level Act (the "ILLA")] is to be published "at least twice prior to the hearing in a newspaper that circulates in the special assessment district" at least 10 days prior to the hearing, MCL 324.30714(2)(a), and "by first class mail addressed to that owner or party at the address shown on the tax records at least 10 days before the date of the

6

hearing," MCL 211.741(1). The ILLA "guarantees notice and an opportunity to be heard before the determination of a special assessment roll" and "a sufficient hearing is one that (1) allows the circuit court to ensure that the county has considered the varying public interests in reaching its policy decision and (2) protects the public against arbitrary governmental action." *In re Chappel Dam,* 282 Mich App at 150-51.

Appellants were afforded all of the protections contained within the ILLA and affirmed by the Court of Appeals in *Chappel Dam.* Appellants have not alleged any deficiency on the part of Appellees regarding the notice requirements as mandated by statute. Additionally, they admit, through submitted affidavits, a public hearing was held in which hundreds of people attended and property owners were given an opportunity to talk to an engineer about their property and the special assessment apportioned to it, to "verbally object to the assessment rolls in front of the [Task Force] board," or "deliver a written objection to the [Task Force] Board." *Appellants' Reply Brief,* p. 5. The ILLA does not provide property owners in a special assessment district anything more than the notice which was provided to Appellants. Appellees not only followed the procedures enacted by the legislature to protect the due process rights of Appellants, but did more through the holding of public webinars, the creation of the virtual map for property owners to view, and posting notice of the hearing in more places than was required, i.e. on the websites for Midland County, Gladwin County, and [the Task Force]. Accordingly, the Court finds there has not been any violation of Appellants' due process rights in the manner the public hearing was noticed by Appellees, nor in the manner the public hearings were conducted.

(*Id.*, PageID.735-737.)

The state circuit court next turned to Plaintiffs' argument that the special assessments were disproportionate and therefore improper. It explained that there

7

was a "rebuttable presumption" under Michigan law that the assessments were valid, and it held that the Plaintiffs "failed to demonstrate an unreasonable disproportionality between the amounts of their assessments in comparison to the benefit derived to overcome the rebuttable presumption in favor of validity." (*Id.*, PageID.739.)

Plaintiffs appealed the state circuit court's decision to the Michigan Court of Appeals.  That court affirmed the denial of relief on January 6, 2025. *See Heron Cove*, 2025 WL 37903, at *1–6.

## D

While the First State Court Action was pending in the Midland County Circuit Court, Plaintiffs filed a second case in that forum: this civil action. (*See* Compl., ECF No. 1-1; First Am. Compl., ECF No. 1-2.)  Defendants later removed the action to this Court (the "Current Federal Proceeding"). (*See* Notice of Removal, ECF No. 1.)

In the Current Federal Proceeding, Plaintiffs bring four claims against the County Board and the Task Force.  In Counts I and II of the First Amended Complaint, Plaintiffs say that the special assessments constitute an inverse condemnation in violation of the Takings Clauses of the United States and Michigan Constitutions (the "Takings Claims"). (*See* First Am. Compl. at ¶¶ 60-92, ECF No. 1-2, PageID.258-261.)  More specifically, Plaintiffs assert that (1) "[t]he special

assessments do not benefit Plaintiffs' properties in the form of increased market value and instead decrease the net value" of Plaintiffs' properties and (2) "[t]he methodology used to apportion the special assessment[s] [was] arbitrary and capricious and contrary to law." (*Id.* at ¶¶ 70, 73, PageID.259.)  Next, in Counts III and IV of the First Amended Complaint, Plaintiffs claim that the County Board and the Task Force violated their procedural due process rights under both the United States and Michigan Constitutions (the "Due Process Claims"). (*See id.* at ¶¶ 93-108, PageID.261-263.)  In the Due Process Claims, Plaintiffs assert that the County Board and Task Force should not have been able to levy the special assessments in the absence of "[a]dditional or substitute procedural safeguards, including obtaining expert reports on the benefits derived from the Dams." (*Id.* at ¶ 99, PageID.262.)

Both the County Board and the Task Force have now moved to dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Task Force Mot., ECF No. 9; Cnty. Bd. Mot., ECF No. 10.)  Defendants raise several arguments in their motions.  They primarily argue (1) certain Plaintiffs lack standing, (2) Plaintiffs' claims are barred by *res judicata* and/or collateral estoppel, and (3) Plaintiffs' claims fail on the merits. (*See id.*)  Plaintiffs filed a joint response to the motions on July 30, 2024. (*See* Resp., ECF No. 17.)  The Court held a hearing on the motions on December 12, 2024, and it is now prepared to rule on the motions.

## II

### A

Defendants first argue that several individual Plaintiffs and Heron Cove do not have standing to bring claims in the Current Federal Proceedings. (*See* Task Force Mot., ECF No. 9, PageID.319-320; Cnty. Bd. Mot., ECF No. 10, PageID.517-520.)  The Court will address those arguments separately.

### 1

With respect to the individual Plaintiffs, Defendants contend that those Plaintiffs who (1) "do not own property within the [District]" and (2) own property in the District but were "assessed $0" "have no property right or interest at stake" in this case. (Cnty. Bd. Mot., ECF No. 10, PageID.519-520. *See also* Task Force Mot., ECF No. 9, PageID.320.)  The Court agrees.  Plaintiffs who do not own property in the District and/or who are not currently subject to any special assessment do not have standing to challenge the special assessments because those Plaintiffs have not suffered any injury. *See*, *e.g.*, *Fox v. Saginaw Cnty., Mich.*, 67 F.4th 284, 292–93 (6th Cir. 2023) (explaining that actual injury is an essential element of Article III standing).  The Court will therefore dismiss the claims of those Plaintiffs without prejudice.

### 2

The County Board further argues that "Heron Cove lacks standing to challenge the assessment, or the procedure followed to establish the assessment"

because Heron Cove "has no property right or interest at stake and has not suffered any injury." (Cnty. Bd. Mot., ECF No. 10, PageID.518.)  In response, Heron Cove asserts that it has "association[al]" standing to pursue claims on behalf of its members. (Resp., ECF No. 17, PageID.688-689.)   The Court agrees with Heron Cove – but only in part.  The Court concludes that Heron Cove has associational standing to pursue the Due Process Claims, but not the Takings Claims, and some, but not all, of the relief sought in this action.

The doctrine of "associational standing" "sometimes permits an entity to sue over injuries suffered by its members even when . . . the entity itself alleges no personal injury." *Assoc. of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 537 (6th Cir. 2021).  "An organization may sue on behalf of its members if it shows that: (1) its 'members would otherwise have standing to sue in their own right'; (2) the 'interests' that the suit 'seeks to protect are germane to the organization's purpose'; and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Id.* (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

The first element of the test is satisfied because the individual members of Heron Cove who own property in the District and/or who are currently subject to the special assessments do have standing to sue in their own right.

11

The second element of the test is likewise satisfied because the interest Heron Cove seeks to protect – the interest of its members not to be subject to allegedly unconstitutional assessments – is germane to Heron Cove's organizational purpose to "promote the general welfare of its members." (First Am. Compl. at ¶ 2, ECF No. 1-2, PageID.250.)

The third element of the test is satisfied only in part. As the Sixth Circuit has explained, the third element of the associational standing test is not satisfied where claims "would require evaluating separately the individual circumstances of each member" of an organization or where a request for damages "would require individualized proof." *Neighborhood Action Coal. v. City of Canton, Ohio*, 882 F.2d 1012, 1017 (6th Cir. 1989) (declining to recognize standing of association to seek individualized damages on behalf of its members). The Court's analysis of this third element is different as applied to each of Plaintiffs' claims. The Court will therefore analyze the application of the third element to the Takings Claims and Due Process Claims separately.

The Court begins with the Takings Claims. The third element of the associational standing test is not met with respect to the Takings Claims because those claims (if they exist, see below at Section (II)(C)(2)) would require evaluating the individual circumstances of each Heron Cove member. More specifically, to resolve the Takings Claims, the Court would have to determine – on a parcel-by-

parcel basis – whether the Defendants' imposition of the special assessments amounted to a taking. To complete that task for a particular parcel, the Court would have to compare the amount of the assessments against the parcel to the benefit conferred upon the parcel by the reconstruction of the dams. That exercise involves and requires a review of each property owners' particular circumstances. Thus, the third element of the associational standing test is not satisfied with respect to the Takings Claims.

There is one more reason that the third element of the associational standing test is not satisfied with respect to the Takings Claims. The remedy sought with respect to those claims is "just compensation for the taking of [Heron Cove's members' real] properties" (First Am. Compl., ECF No. 1-2, PageID.250), and the computation of those damages would require individualized proof – evidence focused on the particular loss in value allegedly caused to each parcel of property. For this additional reason, Heron Cove – which has not cited a single case in which any court has found an association to have standing to assert a takings claim on behalf of its members – lacks associational standing to pursue the Takings Claims.

The Court next turns to whether the third element of the associational standing test is satisfied with respect to the Due Process Claims. The Court concludes that Heron Cove does have standing to assert those claims because the Court could adjudicate the claims without evaluating the individual circumstances of Heron

Cove's members. *See*, *e.g.*, *Neighborhood Action Coal.*, 882 F.2d at 1017 (holding that organization had associational standing to pursue claims and relief that "would inure to the benefit of all members of the association actually injured"). The individual circumstances of each Heron Cove member need not be considered when assessing the Due Process Claims because the process employed by Defendants in adopting the special assessments was the same vis-à-vis all of Heron's Cove's members.

The third element of the test is also satisfied with respect to the request for non-monetary relief on the Due Process Claims – including, for instance, an order "vacat[ing] the special assessment rolls" (First Am. Comp., ECF No. 1-2, PageID.264) – because the Court can grant that relief without individualized proof from each of Heron Cove's members.

However, the third element of the test is not satisfied with respect to the request for monetary damages as relief for the alleged due process violations. Like money damages for the Taking Claims, money damages for the Due Process Claims could not be awarded without individualized proof from Heron Cove members concerning the specific monetary impacts that the assessments had on their property. Thus, Heron Cove lacks standing to seek monetary damages as a remedy for the Due Process Claims.

**3**

For the reasons explained above, the Court will dismiss without prejudice for lack of standing (1) claims brought by Plaintiffs who do not own any property in the district and/or who are not subject to any special assessment(s) and (2) the Takings Claims brought by Heron Cove and all of Heron Cove's requests for monetary relief.

**B**

**1**

Defendants next argue that the Due Process Claims are barred by collateral estoppel. (*See* Task Force Mot., ECF No. 9, PageID.317-318; Cnty. Bd. Mot., ECF No. 10, PageID.520-528.)   Defendants contend that in the First State Court Action, "Plaintiffs argued (in their principal brief, reply briefs, and at oral argument) that the process employed by Defendants in approving the special-assessment rolls violated their procedural-due-process rights.   They lost." (Task Force Mot., ECF No. 9, PageID.317.)   Thus, Defendants say, "there can be no dispute that the issue of whether Defendants complied with procedural due process was actually litigated to a final judgment" in the First State Court Action and therefore Plaintiffs are not entitled to pursue the due process claims a second time in the Current Federal Proceeding. (*Id. See also* Cnty. Bd. Mot., ECF No. 10, PageID.527-528.) The Court agrees.

When reviewing whether a state-court judgment is entitled to preclusive effect under the doctrine of collateral estoppel, "federal court[s] 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Gilbert v. Ferry*, 413 F.3d 578, 580 (6th Cir. 2005) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 293 (2005)).   "In Michigan, collateral estoppel applies when: (1) an issue has been actually litigated and determined by a valid and final judgment; (2) the same parties have had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel." *Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019). Where, as in this case, "collateral estoppel is being invoked defensively," mutuality "is not required." *Id.*

The elements for collateral estoppel have been met here.  First, the same due process issue Plaintiffs raise in the Due Process Claims – whether Plaintiffs received sufficient procedural due process before the special assessments were levied – was "actually litigated" in the First State Court Action.  Indeed, that due process issue was squarely presented to the state circuit court in much the same way that it has been raised in this Court.  As here, Plaintiffs argued in the First State Court Action that "the special assessments levied on their properties equate[d] to a taking by the government and the procedures followed by [Defendants] were insufficient to safeguard [Plaintiffs'] due process rights." (St. Ct. Order, ECF No. 17-4, PageID.735.)  And the state circuit court held that Plaintiffs were "afforded all of the

16

protections" entitled to them under law and that there "ha[d] not been any violation of [Plaintiffs'] due process rights in the manner the public hearing was noticed by [Defendants], nor in the manner the public hearings were conducted." (*Id.*, PageID.736-737.)

Second, "the same parties . . . had a full and fair opportunity to litigate th[is] issue" in the First State Court Action. *Peterson*, 931 F.3d at 554. Heron Cove appeared as a plaintiff in that action and represented the interests of all of the property owners in the District with respect to the due process claim, just as Heron Cove is doing here. In fact, the state circuit judge presiding over that action held that Heron Cove had associational standing to assert the property owners' due process claim there. (*See* St. Ct. Order, ECF No. 17-4, PageID.733-734.) Thus, the individual Plaintiffs here – all of whom are members of Heron Cove (*see* First Am. Compl. at ¶ 2, ECF No. 1-2, PageID.250) – were actually represented in the First State Court Action by Heron Cove. At a minimum, all of the individual Plaintiffs here were in privity with Heron Cove. *See*, *e.g.*, *Bacon v. Cnty. of St. Clair*, 2016 WL 7427065, at *5 (Mich. Ct. App. Dec. 20, 2016) (holding that members of association were in privity with association for purposes of determining whether collateral estoppel applied). Moreover, and in any event, it appears that the overwhelming majority of the individual Plaintiffs here were parties to the First State Court Action. And in the First State Court Action, Heron Cove and the individual

Plaintiffs had a full and fair opportunity to litigate, and did litigate, their procedural due process claim. They filed a comprehensive brief in the First State Court Action setting forth their argument on the due process claim in detail and participated in a hearing in that court. (*See* St. Ct. Br., ECF No. 9-9.)

For these reasons, the elements of collateral estoppel are met with respect to the Due Process Claims, and Plaintiffs are estopped from claiming that Defendants adopted and imposed the special assessments in violation of their (Plaintiffs') due process rights. Plaintiffs therefore cannot pursue the Due Process Claims in the Current Federal Proceedings.

## 2

Plaintiffs resist this conclusion, but none of their responses persuade the Court not to apply collateral estoppel. Plaintiffs primarily argue that the state circuit court's decision in the First State Court Action is not entitled to preclusive effect because they have taken an appeal from the judgment in that case. They contend that "[a] decision is final [only] when all appeals have been exhausted or when the time available for an appeal has passed," and, Plaintiffs say, "as of this writing, an appeal by right and an appeal by leave are pending before the Michigan Court of Appeals." (Resp., ECF No. 17, PageID.692.) But on January 6, 2025, after Plaintiffs submitted their response brief in the Current Federal Proceedings, the Michigan Court of Appeals issued an order affirming the decision of the state circuit court in

the First State Court Action.  And in that appellate order, the Michigan Court of Appeals specifically rejected Plaintiffs' argument that the Defendants violated their procedural due process rights. *See Heron Cove*, 2025 WL 37903, at *5–6 (rejecting argument, which Plaintiffs have also raised here, that Plaintiffs "were deprived of their procedural due process rights due to a lack of opportunity to present evidence before an independent fact-finder or to gather essential evidence").

While Plaintiffs have filed an application for leave to appeal in the Michigan Supreme Court, the Court is not persuaded that the pendency of that application strips the judgment in the First State Court Action of its preclusive effect.  The general rule – as reflected in both case law and the Restatement (Second) of Judgments – provides that the pendency of an appeal does not strip a lower-court's judgment of its preclusive effect, and the Court predicts that the Michigan Supreme Court would follow that general rule.[2]  As the Sixth Circuit has explained, under the

---

[2] The Michigan Supreme Court has not definitively ruled on whether a pending appeal strips a lower-court judgment of its preclusive effect in a second action.  Thus, as this Court would do if its jurisdiction was based on the diversity of the parties, the Court must predict how the Michigan Supreme Court would rule on that question. *See*, *e.g.*, *Welsh v. United States*, 844 F.2d 1239, 1245 (6th Cir. 1988) (explaining, in case arising under a district court's federal question jurisdiction, that courts must "make [their] best prediction, even in the absence of direct state court precedent, of what the [state] Supreme Court would do if it were confronted with th[e] question"); *Ward v. City of Hobbs*, 398 F.Supp.3d 991, 1080 (D.N.M. 2019) (noting that where a "federal court sits in . . . federal question jurisdiction and [has to] interpret[] state law," the court should "look[] to the same principles that govern under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)" and predict how the state supreme court would rule); *Frank v. Wells Fargo Bank, N.A.*, No. 12-110, 2012 WL 13059515, at *2 n.2 (S.D.

general rule followed by the federal courts, "a final trial court judgment [has preclusive effect] while an appeal is pending." *Commodities Exp. Co. v. U.S. Customs Serv.*, 957 F.2d 223, 228 (6th Cir. 1992). *See also Erebia v. Chrysler Plastics Prods. Corp.*, 891 F.2d 1212, 1215 n.1 (6th Cir. 1989) ("[T]he established rule in the federal courts is that a final judgment retains all of its preclusive effect pending appeal."); *Chakan v. City of Detroit (Detroit Fire Dep't)*, 998 F.Supp. 779, 783 (E.D. Mich. 1998) ("Michigan and federal courts agree that an appeal of a judgment does not alter the preclusive effect of the same.").    The Restatement (Second) of Judgments likewise provides that "a judgment otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a trial *de novo*." Restatement (Second) of Judgments § 13, cmt. f (1982).  Notably, the Michigan Supreme Court routinely relies upon and follows the Restatement (Second) of Judgments. *See*, *e.g.*, *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 850–51 (Mich. 2004) (citing to and applying the Restatement (Second) of Judgments when determining whether collateral estoppel applied to bar claim); *Pierson Sand and Gravel, Inc. v. Keeler Brass Co.*, 596 N.W.2d 153, 158 (Mich. 1999) (relying upon the Restatement (Second) of Judgments).  Thus, the Court is persuaded that the Michigan Supreme Court would follow the general rule, as confirmed in the

---

Tex. Aug. 14, 2012) (explaining that *Erie* "applies even in cases arising under federal question jurisdiction").

Restatement (Second) of Judgments, and would conclude that Plaintiffs' application for leave to appeal does not strip the judgment in the First State Court Action of its preclusive effect here.[3]

Plaintiffs counter that the Michigan Court of Appeals has reached the opposite conclusion. They point out that in *Leahy v. Orion Twp.*, 711 N.W.2d 438, 441 (Mich. App. 2006), the Michigan Court of Appeals said that "[a] decision is final when all appeals have been exhausted or when the time available for an appeal has passed." And Plaintiffs say that because their appeals in the First State Court Action have not been exhausted, the state circuit court's judgment cannot have preclusive effect here. (*See* Resp., ECF No. 17, PageID.692, citing *Leahy*, 711 N.W.2d at 441.) But the Court is not persuaded that the Michigan Supreme Court would follow *Leahy*. The portion of *Leahy* that Plaintiffs rely upon is *dicta* and is not supported by any reasoning or analysis. In *Leahy*, a petitioner challenged "a residential property tax valuation judgment of the Michigan Tax Tribunal." *Leahy*, 711 N.W.2d at 440. But at the time he did so, he had "failed to take advantage of appellate opportunities to

---

[3] Other courts have reached the same conclusion. *See*, *e.g.*, *In re Kramer*, 543 B.R. 551, 559 (Bankr. E.D. Mich. 2015) (concluding that Michigan courts would hold that "a final (*i.e.*, not interlocutory) judgment has preclusive effect under the doctrine of collateral estoppel (also known as issue preclusion), even when the judgment is on appeal or the time for appeals has not yet expired"); *In re Basrah Custom Design, Inc.*, 600 B.R. 368, 376 (Bankr. E.D. Mich. 2019) ("The State Court Decision is considered a valid, final judgment for collateral estoppel purposes, even though the Debtor and Weaam Nocha have appealed that decision to the Michigan Court of Appeals.").

disturb the challenged assessment while he had time to do so." *Id.* at 441.  Thus, because the "time available for appeals" in *Leahy* "ha[d] run out," that court never conducted any analysis of the effect an application for leave to appeal would have on the doctrine of collateral estoppel. *Id.*  This Court therefore declines to follow the identified portion of *Leahy*. *See*, *e.g.*, *In re Kramer*, 543 B.R. at 557–58 (discussing and declining to follow same identified language from *Leahy* and noting that "by its own terms, *Leahy* does not preclude the possibility that a judgment may be final for collateral estoppel purposes *before* it is fully resolved on appeal or the time for appeals has run") (emphasis in original).

Plaintiffs next counter that collateral estoppel does not apply here because the remedies available in the Current Federal Proceedings are different from and more expansive than the limited remedies available in First State Court Action. (*See* Resp., ECF No. 17, PageID.693-695.)  But Plaintiffs have not cited any authority for the proposition that the application of collateral estoppel depends upon whether the remedies in two related actions are the same.  And it is not the Court's responsibility to search for that authority for Plaintiffs. *See*, *e.g.*, *Total Renal Care, Inc. v. Childers Oil Co.*, 743 F.Supp.2d 609, 619 (E.D. Ky. 2010) (Thapar, J.) ("It is not the Court's responsibility to troll through the annals of Kentucky law in search of legal authority that the parties have not provided."); *Rajapakse v. Internet Escrow Servs.*, No. 21-cv-158, 2022 WL 4084417, at *4 (E.D. Tenn. Sept. 6, 2022) ("It is not the Court's

responsibility to search through caselaw to find support for Defendant's arguments.").

For all of these reasons, the Court concludes that the Due Process Claims are barred by collateral estoppel. The Court will therefore dismiss Counts III and IV of the First Amended Complaint.

## C

### 1

The Court next turns to the Takings Claims in Counts I and II of the First Amended Complaint. Defendants first argue that, as with the Due Process Claims, the Takings Claims are barred by collateral estoppel and/or *res judicata*. (*See* Task Force Mot., ECF No. 9, PageID.316-317; Cnty. Bd. Mot., ECF No. 10, PageID.520-528.) This is a serious argument. However, the Court is not persuaded that the claims raised and ruled upon in the First State Court Action are precisely the same as the Takings Claims that Plaintiffs have raised here in the Federal Court Proceedings. The Court therefore concludes that it is most appropriate to review the Takings Claims on their merits. It turns to that analysis below.

### 2

Under both federal and Michigan law, where, as here, an alleged taking does not render a property "valueless," courts generally evaluate the constitutionality of the alleged taking "us[ing] the balancing test of *Penn Central Transportation Co. v.*

*City of New York*, 438 U.S. 104 (1978)." *Tennessee Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 455 (6th Cir. 2009). *See also K&K Const., Inc. v. Dep't of Nat. Res.*, 575 N.W.2d 531, 535 (Mich. 1998) (citing *Penn Central*).  Under *Penn Central*, courts consider three factors: "(1) the character of the government's action, (2) the economic effect of the regulation on the property, and (3) the extent by which the regulation has interfered with distinct, investment-based expectations." *K&K Const.*, 575 N.W.2d at 535.

No party has cited cases applying the *Penn Central* factors to determine whether a special assessment amounts to a taking.  And there may not be such a case because it is not obvious that a special assessment can rise to the level of a taking under the federal Constitution.  As the Eighth Circuit explained, it is "somewhat unclear whether special assessments for local improvements constitute takings." *Creason v. City of Washington*, 435 F.3d 820, 825 (8th Cir. 2006).  There appears to be a similar lack of clarity under Michigan law.  *Compare Gaut v. City of Southfield*, 192 N.W.2d 123, 125 n.1 (Mich. Ct. App. 1971) ("A special assessment is not a 'taking' of property for public use.") *with Dixon Rd. Grp. v. City of Novi*, 395 N.W.2d 211, 217 (Mich. 1986) (suggesting that a special assessment could potentially be "akin to the taking of property").

Those courts that have suggested that a special assessment could rise to the level of a taking have explained that that only happens where the burden of a special

24

assessment *substantially* outweighs the benefit to the property being assessed. *See Vill. of Norwood v. Baker*, 172 U.S. 269, 279 (1898) ("In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation."); *Dixon Rd. Grp.*, 395 N.W.2d at 216–17 (explaining that a special assessment could be "akin to a taking" where "there is a substantial or unreasonable disproportionality between the amount assessed and the value which accrues to the land as a result of the improvements"); *CED Properties, LLC v. City of Oshkosh*, 909 N.W.2d 136, 151–52 (Wis. 2018) (citing *Norwood* and explaining that "[a] special assessment in substantial excess of special benefits accruing to the property is an unlawful taking without compensation"); *Hubbard v. City of Pierre*, 784 N.W.2d 499, 504–05 (S.D. 2010) (citing *Norwood* and holding that "if a local public improvement confers a special benefit on private property, a special assessment can be constitutionally imposed if the assessment does not exceed the benefit received").

Here, the Takings Claims fail because Plaintiffs have not pleaded any facts tending to show that, with respect to any particular parcel of real property, the amount of the assessment imposed substantially exceeds the benefits conferred. Indeed, not a single Plaintiff identifies his parcel of property that is subject to the

assessment, sets forth the amount of the assessment on his property, addresses the benefits, if any, that the reconstructed dams will have on his property, and then pleads facts showing that the cost substantially exceeds the benefit. Instead, Plaintiffs address the relationship between the amount of the assessments and the benefits conferred in the following allegation that purports to cover all of the Plaintiffs and all of their properties: "Upon information and belief, the cost of the special assessments is in 'substantial excess' of the benefits accrued to the land." (First Am. Compl. at ¶ 50, ECF No. 1-2, PageID.256.) This conclusory allegation merely parrots the language of the test to be applied when determining whether an assessment rises to the level of a taking. As such, it is insufficient to establish that any parcel of real property owned by any Plaintiff has been the subject of a taking as a result of the special assessments. *See*, *e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "a formulaic recitation of the elements of a cause of action will not do"); *Yaldo v. Homeward Residential, Inc.*, 622 F. App'x 514, 516 (6th Cir. 2015) (affirming dismissal of claims and holding that an "allegation [that] simply parrots the [applicable] legal standard . . . without providing specific factual allegations" is insufficient to state a viable claim).

For all of these reasons, the Court will dismiss the Takings Claims in Counts I and II of Plaintiffs' First Amended Complaint.

## III

For the reasons explained above, Defendants' motions to dismiss (ECF Nos.

9, 10) are **GRANTED**.  Plaintiffs' claims are **DISMISSED** as follows:

- The Due Process Claims brought by Heron Cove and Plaintiffs who own property in the District and/or are subject to a special assessment are **DISMISSED WITH PREJUDICE**;

- The Takings Claims brought by Plaintiffs who own property in the District and/or are subject to a special assessment are **DISMISSED WITH PREJUDICE**; and

- All other claims and requests for relief are **DISMISSED WITHOUT PREJUDICE** for lack of standing.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 20, 2025


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 20, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126
